J. A15044/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :      IN THE SUPERIOR COURT OF
                      :            PENNSYLVANIA
           v.            :
                      :
ZACKERY JAMES ZERBE,        :        No. 1941 MDA 2017
                      :
         Appellant     :

Appeal from the Judgment of Sentence, November 13, 2017,`
in the Court of Common Pleas of Lancaster County
Criminal Division at No. CP-36-CR-0006134-2016

BEFORE: PANELLA, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 09, 2018**

Zackery Zerbe appeals the November 13, 2017 judgment of sentence in which the Court of Common Pleas of Lancaster County sentenced him to an aggregate term of 40 months to 10 years' imprisonment for aggravated assault, simple assault, and terroristic threats following a jury trial.[1] After careful review, we affirm.

The facts, as stated by the trial court, are as follows:

> [Appellant] and the victim, [S.B.] [("victim")], were married on August 14, 2015. Their families were familiar with each other as [appellant], [appellant's] father, the victim, and the victim's family all worked for a company owned by the victim's father. At some point, the victim began to have concerns about [appellant's] drinking and expressed that to him. The victim testified that a mere two (2) weeks before the incident that gave rise to the instant charges,

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(3), and 2706(a)(1), respectively.

[appellant's] drinking had led to an incident where he punched her in the back of the head a couple of times and threatened to get a gun. According to the victim, [appellant] had threatened her, her family and her animals if she told anyone about the incident and she was scared.

Subsequently, on November 11, 2016, [appellant] physically attacked the victim after she questioned [appellant] about his drinking. [Appellant] came into the bedroom after the victim had gone to bed and proceeded to punch her repeatedly in the head, face and her arms as she attempted to shield herself. [Appellant] then proceeded to restrain the [victim] while choking her with his arm and telling her that she needed to die. The victim testified that during this time she could not breathe, involuntarily urinated herself and could feel herself slipping in and out of consciousness. At some point, the victim's earrings were ripped from her ears. [Appellant] eventually let go of the victim and, after pacing and yelling for some time, retrieved a gun from a dresser. [Appellant] waved the gun around and pointed it at the victim threatening to kill her and her family. [Appellant] told the victim that he was in control and that she was going to listen to him and not see her parents anymore. The victim pleaded with [appellant] to put the gun down and after the victim had responded that she had learned her lesson, [appellant] put the gun on the dresser and left the room.

After [appellant] had left the room, the victim hid the gun in another dresser drawer and texted her sister for help from [appellant's] cell phone, which was left in the room. When the victim's sister arrived at the house, the victim ran past [appellant] and out of the house telling her sister that [appellant] had a gun. Together, she and her sister ran, first to her sister's house, and then drove to the victim's parent's [sic] house where her mother called police. The victim was transported to an emergency room, treated for her injuries and released. Photographs were admitted into evidence of the victim's injuries over the course of the next week and of the scene of the incident,

which showed blood on the wall, a urine stain on the bed and earrings on the floor. Dr. Callie Dagen, the victim's treating physician in the emergency room on November 11, 2016, testified that she diagnosed the victim in the emergency room with facial hematomas, a closed-head injury and a left shoulder contusion following the assault. Dr. Harry Kintzi, an expert in emergency medicine, testified that it was his opinion, based upon a review of the victim's medical records and the photographs, that the victim suffered a significant strangulation event that "was not just for a few seconds" and "was probably a near-death experience."

Prior to the incident on November 11, 2016, the victim's medical history included several prior concussions, not related to or caused by [appellant], for which she received continuing treatment once every month. [Appellant] was aware of the victim's medical history and the continuing treatment of her condition prior to punching her in the head on November 11, 2016. In fact, the victim's mother testified that prior to the couple getting married, she had specifically warned [appellant] that the victim must avoid further injury to her head.

Trial court opinion, 1/25/18 at 1-4 (citations to record omitted).

On August 25, 2017, appellant filed a motion *in limine* and sought to bar testimony from the victim concerning prior abuse at the hands of appellant because the probative value of any testimony relative to the allegations of prior abuse was outweighed by the danger of unfair prejudice to appellant. In the same motion, appellant sought to bar testimony regarding prior concussions suffered by the victim because the testimony was irrelevant since appellant did not cause the concussions and any probative value would be substantially outweighed by the danger of unfair prejudice to appellant. At

the start of the trial on August 28, 2017, the trial court denied the motion as to these two issues.

A jury convicted appellant of the aforementioned crimes. Appellant filed a notice of appeal on December 13, 2017. On December 15, 2017, the trial court directed appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 5, 2018, appellant complied with the order. The trial court filed its opinion on January 25, 2018.

Appellant raises the following issues for this court's review:

> I. Did the trial court err in denying [appellant's] Motion in Limine seeking to bar [the victim's] testimony regarding prior, unreported physical abuse by [a]ppellant in addition to her testimony regarding alleged past threats made by [a]ppellant to deter [the victim] from reporting abuse, where the probative value of this evidence was substantially outweighed by its prejudicial effect on [a]ppellant?
>
> II. Did the trial court err in denying [appellant's] Motion in Limine seeking to bar [the victim's] testimony of prior concussions she experienced which were not caused by [a]ppellant, where this evidence was irrelevant and any probative value was substantially outweighed by its prejudicial effect on [a]ppellant?

Appellant's brief at 5.

"On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion." *Commonwealth v. Aikens*, 990 A.2d 1181, 1184 (Pa.Super. 2010) (citations omitted). "Abuse of discretion is not

merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* at 1184-1185 (citations omitted).

Initially, appellant contends that the trial court erred when it denied his motion *in limine* to prevent the victim from testifying regarding prior unreported physical abuse by appellant as well as testimony regarding alleged past threats made by appellant to deter the victim from reporting the abuse because the probative value of the evidence was substantially outweighed by its prejudicial effect. Appellant contends that this evidence was not relevant[2] and was unfairly prejudicial to him and not probative of any pertinent fact and should have been inadmissible under Pennsylvania Rule of Evidence 404(b).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or

---

[2] Rule 401 of the Pennsylvania Rules of Evidence provides that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

accident. Pa.R.E. 404(b)(2).[3] In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Aikens*, 990 A.2d at 1185 (citations to case law omitted).

The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad

---

[3] **Rule 404. Character Evidence; Crimes or Other Acts**

. . . .

**(b) Crimes, Wrongs or Other Acts.**

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

**(3) Exceptions for a Witness.** Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

Pa.R.E. 404(b)(1)-(3). Rules 607-609 address the impeachment of witnesses.

> acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances."
>
> ***Commonwealth v. Reid***, 571 Pa. 1, 35, 811 A.2d 530, 550 (2002) (citations omitted), ***cert. denied***, 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003).

***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa.Super. 2004).

Also, in ***Melendez-Rodriguez***, this court held that evidence of prior abuse was admissible to establish a defendant's intent to terrorize and place the victim in fear of serious bodily injury and to establish how it was possible to terrorize the victim in that case. ***Id.*** at 1286.

Here, the trial court determined that the testimony concerning prior abuse was relevant to indicate the relationship between appellant and victim, the pattern of abuse, the escalating nature of the abuse, and appellant's motive and intent for the abuse at issue. (Trial court opinion, 1/25/18 at 7-8.) The trial court reasoned:

> Specifically, the victim's testimony concerning the tension surrounding the issue of [appellant's] drinking and the abuse that occurred just two (2) weeks prior to [the] November 11, 2016 incident, gives insight as to why the victim questioning [appellant] about his drinking that evening resulted in [appellant] brutally attacking the victim after she had gone to bed.

> Furthermore, [appellant's] prior threats toward the victim, her family and her animals if she disclosed the abuse provides insight into why [appellant] retrieved the gun after the attack and made threats to kill the victim's family and establishes [appellant's] motive for and intent to terrorize the victim with such threats. The challenged evidence shows the chain or sequence of events that formed the history of the case and is part of the natural development of the case. It also demonstrates [appellant's] motive, malice, intent, and ill-will toward the victim. The probative value of the evidence clearly and substantially outweighed any risk of unfair prejudice to [appellant] and its admission was not error.

*Id.* at 8.

The trial court's reasoning is sound and follows established case law. The trial court did not abuse its discretion when it ruled that this relevant evidence was admissible.

Appellant next contends that the trial court erred when it denied appellant's motion *in limine* that sought to bar the victim's testimony of prior concussions she experienced which were not caused by appellant, as this evidence was irrelevant and any probative value was substantially outweighed by the prejudicial effect on appellant. Appellant asserts that these concussions were not relevant because they occurred years before appellant and the victim were in a relationship and before the date of the abuse at issue here. Appellant claims that the evidence has no relationship to the case against appellant as it does not tend to prove or disprove any pertinent fact of the case. Further, the admission of this evidence, appellant argues, was not

harmless because it cast appellant in an extremely negative light in that he had the past concussions in mind when he hit the victim in the head.

With respect to this issue, the trial court concluded:

> The testimony concerning the victim's prior concussions, the victim's continuing treatment and [appellant's] knowledge about the victim's condition was relevant because it tends to establish [appellant's] motive for punching [the victim] repeatedly in the head and his intent to cause serious bodily injury. The victim specifically testified that the prior concussions were not caused by [appellant]. The probative weight of the testimony clearly and substantially outweighed any risk of unfair prejudice to [appellant] and its admission was not error.

Trial court opinion, 1/15/18 at 9.

This court agrees that the evidence was relevant for the reasons stated by the trial court. The trial court did not abuse its discretion when it ruled that this evidence was admissible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2018